# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| The Bradbury Co., Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Andre Teissier-duCros; Georgia | ) | |
| P. Bevis; Gean Oversease, Inc.; | ) | |
| Gean Overseas/Bossard, Inc.; | ) | |
| and ASC Machine Tools, Inc., | ) | |
| | ) | |
| Defendants. | ) | Case No. 03-1391-WEB |
| Andre Teissier-duCros and Gean | ) | |
| Overseas, Inc., | ) | |
| | ) | |
| Counter Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The Bradbury Co., Inc.; Strilich | ) | |
| Technologies, Inc.; American | ) | |
| Machine & Rollform Tech, Inc.; | ) | |
| Marion Die & Fixture; Hayes | ) | |
| International; and Beck Automation; | ) | |
| David Bradbury, in his individual | ) | |
| capacity; and Chad Bradbury, in his | ) | |
| individual capacity, | ) | |
| | ) | |
| Counter Defendants. | ) | |

## MEMORANDUM AND ORDER

Now before the Court are the motions to dismiss under the provisions of Federal Rules of Civil Procedure 12(b)(6) by the following counter defendants: American Machine & Rollform Tech, Inc. (American), Hayes International (Hayes), Marion Die & Fixture (Marion), and Beck Automation (Beck).

The Court has jurisdiction over this case under 28 U.S.C. §1332 and it is not disputed.

Counter defendants are manufacturers who employed counter plaintiffs as consultants. A contract was signed in 1999 but the business relationship ended in 2001. Counter plaintiffs accuse counter defendants of anti-trust violations, breach of contract, and tortious interference with business and contractual relations.

### I. Governing Standard

A motion to dismiss is appropriate when counter plaintiffs can prove no set of facts in support of the claims what would entitle them to relief. *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir. 1995). The Court must also accept any well-pleaded allegations in the complaint as true and construe them in the light most favorable to the counter plaintiffs. *Fuller v. Norton*, 86 F.3d 1016, 1020 (10th Cir. 1996). In reviewing the sufficiency of the counter claim, the issue is not whether counter plaintiffs will prevail, but whether counter plaintiffs are entitled to offer evidence to support their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Although counter plaintiffs need not precisely state each element of their claims, they still have the burden of alleging sufficient facts on which a recognized legal claim can be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### II.  Marion's, Beck's, Hayes' and American's Motions to Dismiss

A.  Anti-Trust

Counter defendants argue that counter plaintiffs' anti-trust claims ought to be dismissed for the reasons elucidated by this Court in its previous Order. (Doc. 126). Counter plaintiffs offer no additional

support other than incorporating those allegations already stated in their amended counterclaim. (Doc. 51).

"The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The Tenth Circuit also wrote that "[t]he law of the case is a judicial doctrine designed to promote decisional finality. Once a court decides an issue, the doctrine comes into play to prevent the re-litigation of that issue in subsequent proceedings in the same cases." *Wilson v. Meeks,* 98 F.3d 1247, 1250 (10th Cir. 1996) (citations omitted). One of the branches of this doctrine states that a court should generally adhere to its own prior rulings; however, this is a discretionary rule not a limitation on a court's power. *United States v. Johnson*, 12 F.3d 1540, 1545 (10th Cir. 1993). While the Tenth Circuit recognizes three exceptions to the application of the law of the case doctrine, counter plaintiffs do not advocate that any of these exceptions apply. *Id.*

In the Memorandum and Order filed January 4, 2005, this Court ruled that counter plaintiffs' lack standing to assert claims for antitrust violations. (Doc. 126). No additional analysis is necessary in this opinion as the Court chooses to follow the law of the case and the holding in its January Order. (Id.). Hence, the Court grants counter defendants' motion to dismiss on this claim.

B. Breach of Contract

A federal court sitting in diversity jurisdiction applies the substantive law and the choice of law provisions of the forum state, which in this case is Kansas. *Missouri P.R. Co. v. Kansas Gas & Electric Co.,* 862 F.2d 796, 798 n1 (10th Cir. 1988). "For purposes of contract construction, Kansas follows the

support other than incorporating those allegations already stated in their amended counterclaim. (Doc. 51).

"The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The Tenth Circuit also wrote that "[t]he law of the case is a judicial doctrine designed to promote decisional finality. Once a court decides an issue, the doctrine comes into play to prevent the re-litigation of that issue in subsequent proceedings in the same cases." *Wilson v. Meeks,* 98 F.3d 1247, 1250 (10th Cir. 1996) (citations omitted). One of the branches of this doctrine states that a court should generally adhere to its own prior rulings; however, this is a discretionary rule not a limitation on a court's power. *United States v. Johnson*, 12 F.3d 1540, 1545 (10th Cir. 1993). While the Tenth Circuit recognizes three exceptions to the application of the law of the case doctrine, counter plaintiffs do not advocate that any of these exceptions apply. *Id.*

In the Memorandum and Order filed January 4, 2005, this Court ruled that counter plaintiffs' lack standing to assert claims for antitrust violations. (Doc. 126). No additional analysis is necessary in this opinion as the Court chooses to follow the law of the case and the holding in its January Order. (Id.). Hence, the Court grants counter defendants' motion to dismiss on this claim.

B. Breach of Contract

A federal court sitting in diversity jurisdiction applies the substantive law and the choice of law provisions of the forum state, which in this case is Kansas. *Missouri P.R. Co. v. Kansas Gas & Electric Co.,* 862 F.2d 796, 798 n1 (10th Cir. 1988). "For purposes of contract construction, Kansas follows the

theory of lex loci contractus – the place of the making of the contract controls. Under this approach, the court looks to where the last act necessary for the creation of the contract takes place, and that state's law controls." *Clements v. Emery Worldwide Airlines, Inc.*, 44 F. Supp. 2d 1141, 1145 (D. Kan. 1999). The agreement was made in Kansas. The parties use Kansas law in their briefs and the Court will apply Kansas law to decide this issue.

The elements for a breach of contract claim are: 1) the existence of a contract between the parties; 2) consideration; 3) the plaintiff's performance or willingness to perform in compliance with the contract; 4) defendant's breach of the contract; and 5) that plaintiff was damaged by the breach. *Britvic Soft Drinks, Ltd. v. ACSIS Techns., Inc.*, 265 F.Supp.2d. 1179, 1187 (D. Kan. 2003).

Counter plaintiffs allege two breaches of contract. First, counter defendants did not pay money due after the early termination of the 1999 contract. Second, counter defendants did not pay for consulting services rendered after the termination of the 1999 contract. The following facts are alleged in support of these contentions:

1) The November 15, 1999 agreement is a proposal from counter plaintiffs to the Bradbury Group (Group) and was executed by Bradbury as an agent for the Group. (Answer and Am. Countercl. ¶ 49).

2) The Group consists of Bradbury Company, American, Hayes, Marion, and Beck. (Id. ¶ 36).

3) The November 15, 1999 agreement between the parties included a termination clause providing for a severance penalty to be paid by counter defendants in the case of termination prior to December of 2004. (Id. ¶ 80).

4) Counter defendants terminated the November 15, 1999, agreement without cause on or about December 23, 2000. (Id. ¶ 81).

5) Counter plaintiffs deny being paid according to the contract for early termination. (Id. ¶ 13).

6) Counter defendants continued to engage the services of counter plaintiffs for consulting projects following this termination for which counter defendants were to compensate counter plaintiffs. (Id. ¶ 82).

7) Counter plaintiffs facilitated various negotiations on behalf of counter defendants aimed at the possible acquisition of different companies. (Id. ¶¶ 57, 58).

8) Counter plaintiffs have not been compensated for these additional consulting services. (Id. ¶ 83).

9) Counter plaintiffs have been damaged by counter defendants early termination of the November 15, 1999, agreement, and from counter defendants' failure to pay for additional consulting services provided. (Id. ¶ 84).

Counter defendants argue that dismissal is warranted because: 1) only Bradbury Company and the Group are involved in the contract not the individual counter defendants; 2) Bradbury Company is an agent of the Group not the individual counter defendants; 3) the Court's previous order justifies dismissal; 4) the allegations are insufficient because the pleading does not meet Kansas standards; and 5) the Group is not an agent for the individual counter defendants.

American, Hayes, Marion, and Beck argue for dismissal because counter plaintiffs' counter claim alleges that the 1999 agreement involved Bradbury Company as an agent for the Bradbury Group instead of the individual counter defendants. Morever, counter defendants claim that only the Group and Bradbury Company are alleged to have been involved in the 1999 contract; therefore, American, Hayes, Marion, and Beck must be dismissed as there is no basis on which they could be liable for a breach of the contract.

The Court is not persuaded. The counter claim alleges that Bradbury company executed the 1999 contract as an agent for the Group. (Id. ¶ 49). Counter plaintiffs also allege that the Group consists of the

individual counter defendants, including Hayes, American, Marion, and Beck; hence, each time the word "Group" is mentioned, it is a reference to the individual counter defendants. (Id. ¶ 36). Viewing the allegations in the light most favorable to counter plaintiffs, the pleading sufficiently alleges that Bradbury company was an agent for the individual counter defendants. The Court concludes that the allegations sufficiently connect American, Hayes, Marion, and Beck to the 1999 agreement and allege wrongdoing due to the early termination of said agreement; therefore, counter defendants' motion to dismiss must be denied on this basis. (Id. ¶¶ 13, 80, 81).

Counter defendants next argue that the Court's previous Order justifies dismissal. (Doc. 126). This Court's prior opinion stated that the breach of contract counterclaim established a *prima facie* case for Bradbury Company but it did not foreclose the possibility of including other counter defendants. The Court specifically stated that it was not considering those arguments on behalf of the individual counter defendants (including American, Hayes, Marion, and Beck) which had not yet been joined in the litigation. (Id. at 8).

Counter defendants next argue that dismissal is warranted because there is neither an allegation that American, Hayes, Marion, or Beck received services from counter plaintiffs after contract termination nor an allegation that they failed to pay. The Court disagrees. Counter plaintiffs allege that all counter defendants, not just Bradbury Co., Inc., used their consulting services after the 1999 agreement termination and failed to pay for those services. (Answer and Am. Countercl. ¶¶ 57, 58, 82, 83). This allegation is sufficient to give counter defendants notice of the alleged wrongdoing and the basis for relief. Fed. R. Civ. P. 8.

Counter defendants also argue that counter plaintiffs' pleading is insufficient to state a claim because

6

"in stating a claim on contract, the pleader should allege the making of a contract, its terms and the breach thereof, which must not be left to inference." *Thompson v. Phillips Pipe Line Co.,* 438 P.2d 146, 200 Kan. 669 (1968). Counter defendants reliance on Kansas case law is misguided. "Under standard Erie doctrine, state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law." *Andresen v. Diorio,* 349 F.3d 8, 17 (1st Cir. 2003); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (rule 8's simplified pleading standard applies to all civil actions).

Counter defendants finally argue that dismissal is justified because the Group cannot be an agent for the counter defendants as it is not an entity capable of being sued. While counter plaintiffs have argued this point in their brief, there is nothing in the pleadings that alleges that the Group acted as an agent for the counter defendants. Therefore, it is unnecessary to reach the merits of this issue because such a theory is alleged no where in the pleading. However, for reasons already explained in this section, dismissal is not warranted for the breach of contract claims because counter plaintiffs have sufficiently alleged other grounds for relief.

C.  Interference with Contractual and Business Relations

"The rule in this state is that the law of the state where the tort occurred – *lex loci delicti* – should apply." *Ling v. Jan's Liquors,* 703 P.2d 731, 735, 237 Kan. 629, 634 (1985). The injury in this case is financial. ATC is a citizen of Georgia and GOI is incorporated in Georgia; therefore, the financial injury was felt in Georgia. *St. Paul Furniture Mfg. Co. v. Bergman,* 935 F. Supp. 1180, 1187 (D. Kan. 1996). The parties use and the Court will apply Georgia law for this issue.

"Tortious interference with business relations is a distinct and separate tort from that of tortious interference with contractual relations, although some of the elements of the two torts are similar." *Renden, Inc. v. Liberty Real Estate Ltd. Partnership,* 444 S.E. 2d 814, 817, 213 Ga. App. 333, 334 (1994).

Georgia law states that tortious interference with contractual relations occurs when: 1) there is improper action or wrongful conduct by the defendant without privilege; 2) the defendant acted purposely and with malice with the intent to injure; 3) the defendant interfered with a third party's then existing contractual rights and relations; and 4) caused plaintiff financial injury. *Britt/Paulk Ins. Agency v. Vandroff Ins. Agency,* 952 F. Supp. 1575, 1583 (N.D. GA. 1996).

Counter plaintiffs allege the following facts in their amended counter claim:

1) The November 15, 1999 agreement does not contain a non-competition clause. (Answer and Am. Countercl. ¶ 87).

2) Counter defendants have told current and prospective clients of counter plaintiffs that counter plaintiffs have violated a non-competition clause. (Id. ¶¶ 67, 88).

3) These wrongful allegations damaged counter plaintiffs' business. (Id. ¶ 89)

4) Counter plaintiffs have suffered financial harm. (Id. ¶ 90).

American, Hayes, Marion, and Beck argue that dismissal is warranted because: 1) the pleadings are conclusory and do not state the necessary elements; 2) there is no liability when notifying a third party of a non-competition clause; 3) there is no liability for asserting a contractual right; and 4) there is no liability because counter defendants' actions were privileged.

Counter defendants argue that counter plaintiffs' pleading must fail because they are conclusory and do not state the elements. Specifically counter defendants highlight the absence in the pleading of such

words as "without privilege", "improper", "wrongful", and "purposely with malice". The Court is not convinced that this justifies a dismissal. First, the word "wrongful" is clearly used in the counterclaim to describe counter defendants' conduct. (Id. ¶ 89). Second, counter defendants provide no support for their argument that a claim must be dismissed for failing to use specific words in a pleading. This proposition is contrary to the spirit of the notice pleadings requirement in Rule 8 which requires "only a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *see Altrutech, Inc. v. Hooper Holmes, Inc.*, 992 F. Supp. 1264, 1266 (D. Kan. 1998) (plaintiff need not state each element of the claim rather it must plead minimal factual allegations on those material elements that must be proved). Moreover, the Court finds that the pleadings sufficiently allege the nature of the wrongful conduct (telling third parties that counter plaintiffs are bound by a non-competition covenant when none existed), the nature of the third parties (current and prospective clients) and damages. Viewing the allegations in the light most favorable to the counter plaintiffs, the Court finds that they have adequately pleaded a cause of action for interference with contract and/or business relations.

Counter defendants next cite several cases as authority that there is no liability for notifying a third party of a non-competition covenant or for asserting a contractual right. *Jackson v. Nationwide Credit*, 426 S.E. 2d 630, 206 Ga. App. 810 (1992); *Lykins v. Nationwide Mutual Insurance Co.*, 448 S.E. 2d 716, 214 Ga. App. 577 (1994); *Russell Corporation v. BancBoston Financial Co.*, 434 S.E. 2d 716, 209 Ga. App. 660 (1993); *Driggers v. Continental Grain Co.*, 435 S.E.2d 722, 210 Ga. App. 293 (1993).

The *Jackson* court upheld the lower court's decision to grant summary judgment to defendant. *Jackson*, 426 S.E. 2d at 632. The court stated that "the trial court was correct in concluding that in the

9

absence of evidence showing a malicious intent to injure, no action could be maintained against Nationwide on this claim...[f]urther, the record plainly shows that appellants suffered no damages..." *Id.*

In *Lykins,* plaintiff sued because her former company ceased providing her benefits once defendant reported to the company that she was violating her non-competition covenant. *Lykins*, 448 S.E. 2d at 718. The Court affirmed the lower court's ruling granting defendant's motion for summary judgment because plaintiff did violate the covenant and there was no impropriety in reporting the matter to the company. *Id.*

In *Russell,* the court held that the bank had a contractual right to refuse to honor new demands for additional overadvances and in *Driggers*, there was no liability for a lender that asserted its rights under the contract. *Russell*, 434 S.E. 2d 719; *Driggers,* 435 S.E. 2d at 723.

The rationale in these cases does not support dismissal. Unlike the summary judgments at issue in *Jackson* and *Lykins*, a motion to dismiss does not involve reviewing or weighing evidence; rather, it assesses whether the counter plaintiffs' claim is legally sufficient to state a claim for which relief may be granted. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). As stated earlier in this section, the pleadings do sufficiently state a claim. While counter defendants argue that a non-competition covenant existed, counter plaintiffs' pleading alleges that one did not exist and this must be accepted as true when evaluating this motion. Therefore, dismissal is not warranted.

Counter defendants next cite a unique case to support their motion for dismissal. *Colquitt v. Network Rental, Inc.*, 393 S.E. 2d 28, 195 Ga. App. 244 (1990). In *Colquitt*, the plaintiff sued for interference with contractual relations when he quit his newly acquired job because the defendant enforced the non-competition clause through a court ordered injunction which was later reversed.

While the Court found for the defendant, *Colquitt's* holding is limited to the answer of this specific

question: "whether a former employer tortiously interferes with contract rights of its former employee by obtaining from a court an injunction against that former employee's working for a competitor." *Id.* at 31. The case *sub judice* is distinguishable from the facts in *Colquitt* because the pleadings do not show that counter defendants interfered with counter plaintiffs' contractual or business relations by enforcing their rights pursuant to a court ordered injunction. The *Colquitt* case does not warrant a dismissal of counter plaintiffs' claim.

Counter defendants next argue that dismissal is warranted because the pleadings show that the alleged statements to third parties were privileged. American, Hayes, Marion, and Beck cite two cases which hold that a successful cause of action for tortious breach of business or contractual relations must show that the counter defendants acted improperly and without privilege. *Choice Hotels Int'l v. Ocmulgee Fields*, 474 S.E. 2d 56, 222 Ga App. 185 (1996); *Metzler v. Rowell,* 547 S.E. 2d 311, 248 Ga. App. 896 (2001). Counter defendants fail to state under which subsection of the privilege statute their communications fall. See O.C.G.A. § 51-5-7 (privileged communications). The cases they cite use O.C.G.A. § 51-5-7(3); consequently, the Court will analyze their motion with reference to this subsection as well. See *Choice,* 474 S.E. 2d at 59 (O.C.G.A. § 51-5-7(3) while primarily applicable to claims for defamation, may also be asserted as a defense to tortious interference with business and contractual relations).

The Court disagrees that the pleadings warrant dismissal based on the defense of privilege. "To make the defense of privilege complete...good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear." *Id.*; *see also Sherwood v. Boshears,* 278 S.E. 2d 124, 126, 157 Ga. App. 542, 543 (1981) (the burden is on the

defendant to establish privilege).  At this stage in the litigation, a determination on the merits based on the defense of privilege is inappropriate.  *See also Southern Business Machines, Inc. v. Norwest Financial Leasing...,* 390 S.E. 2d 402, 408, 94 Ga. App. 253, 260 (1990) (generally the question of whether a communication was privileged is a jury question).  Many facts, including the existence of the non-competition covenant, are disputed.  Moreover, the Court has no information about the scope, occasion or publication of any allegedly privileged statements.  Counter defendants' motions to dismiss the tortious interference of business and contractual relations are denied.

D.  Lack of Capacity

Marion and Beck move the Court to dismiss counter plaintiffs' claims for additional reasons. Marion argues that dismissal is justified because: 1) it is not a legal entity and has no capacity in which to be sued; and 2) service of process was defective.  Beck argues that dismissal is warranted because: 1) Beck Automation is not a legal entity and has no capacity in which to be sued; and 2) Beck Automation L.L.C. was formed on March 19, 2002, after the alleged misdeeds occurred.

"When a party desires to raise an issue as to the legal existence of any party or the capacity of any party sue or be sued...the party desiring to raise the issue shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."  Fed. R. Civ. P. 9(a).  Marion and Beck have directly raised the issue of capacity and legal existence in their a motions to dismiss and the Court holds that this complies with Rule 9(a)'s requirement for a specific negative averment.  *Board of Education v. Illinois State Bd. of Education*, 810 F.2d 707, 710 n.4 (7th Cir. 1987); *Johnston v. Fancher*, 447 F. Supp. 509, 511 (W.D. Okla. 1977).

The state in which a corporation was organized or in the case of an unincorporated association, the state in which the district court is located governs the law determining capacity to be sued. Fed. R. Civ. P. 17(b). The Court will apply Kansas law to determine Marion's and Beck's capacity to be sued.

"It is the general rule to which this jurisdiction has long adhered, that in the absence of a statute to the contrary, an unincorporated association is not a legal entity and can neither sue nor be sued in the name of the association." *Prime v. Beta Gamma Chapter of Pi Kappa Alpha*, 47 P.3d 402, 405, 273 Kan. 828, 830 (2002) (quoting *Kansas Private Club Assn. v. Londerholm,* 408 P.2d 891, 196 Kan. 1 (1965)); *University of Texas v. Vratil,* 96 F.3d 1337, 1339 (10th Cir. 1996) (under Kansas law an unincorporated association lacks capacity to sue or be sued in its own name).

Marion and Beck both argue that dismissal is appropriate because counter plaintiffs have failed to allege that Marion and Beck have a legal existence or the capacity to be sued. This argument is meritless as it is unnecessary to include allegations in the pleading of a parties' capacity or legal existence except when required to show jurisdiction. Fed. R. Civ. P. 9(a).

Next, Marion specifically argues that it is an unincorporated division of Bradbury without capacity to be sued. Marion supports its claim by requesting that the Court take judicial notice of the Secretary of State's website and access Marion's forfeited articles of incorporation. Counter plaintiffs argue that Marion is a business entity of some sort and attach documents showing that Marion has an address, logo and employees. (Counter Pl. Ex. A).

Beck argues that it does not exist as a legal entity and has no capacity to be sued. Counter plaintiffs disagree and attach documents showing that Beck is a business entity of some sort. (Counter Pl. Ex. A). Beck requests that the Court research the issue on the Secretary of State's website. Beck concedes that

13

Beck Automation L.L.C. is a legal entity; however, Beck states that this entity has not been sued. Anticipating that counter plaintiffs will add Beck Automation L.L.C., Beck argues that Beck Automation L.L.C. was not in existence at the time of the alleged wrongdoing.

If on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 56; *Blue Circle Cement v. Board of County Comm'rs,* 27 F.3d 1499, 1503 (10th Cir. 1994).

For two reasons, the Court will convert Beck's and Marion's motions to dismiss on the issues of capacity and legal existence into motions for summary judgement. First, both parties have used matters outside of the pleadings to bolster their arguments on legal existence and capacity. Second, a determination of legal existence and capacity requires additional facts. *See Swaim v. Moltan Co.*, 73 F.3d 711, 718 (7th Cir. 1996) (questions involving a party's capacity to be sued turns upon issues of fact).

The Court declines to rule on Marion's insufficiency of process claim as the resolution of this issue requires that the Court first determine if Marion has a legal existence and capacity to be sued.

Counter plaintiffs have not made it clear if they want to sue Beck or Beck Automation L.L.C. The pleading lists Beck as a counter defendant; however, counter plaintiffs changed the caption in their response brief to read Beck Automation L.L.C. and addressed Beck as Beck Automation L.L.C. in their arguments.

Counter plaintiffs must amend the pleadings to add Beck Automation L.L.C. if that is the party they wish to sue. *Jones v. Louisiana,* 764 F.2d 1183, 1186 (10th Cir. 1985) (technical changes concerning a party are proper under Rule 15(a)). Counter plaintiffs do not need leave of the Court to amend their

14

pleadings because "where some but not all [counter] defendants have answered, [counter plaintiffs] may amend as of course claims asserted solely against the non-answering [counter defendant]." *Barksdale v. King,* 699 F.2d 744, 747 (5th Cir. 1983) (internal citations omitted). While other counter defendants have answered the pleading, Beck has not. *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370 (10th Cir. 1989) (a motion to dismiss is not deemed a responsive pleading for purposes of a Rule 15(a) analysis).

If counter plaintiffs indeed want to sue Beck Automation L.L.C., then they are directed to file an amended complaint within 10 days of the filing of this Order. The summary judgment briefs shall address the capacity and legal existence of either Beck or Beck Automation L.L.C., depending on which entity counter plaintiffs intend to sue. If counter plaintiffs have not filed an amended pleading to include Beck Automation L.L.C. within the allotted ten days, then the briefs will address these issues with respect to the original counter defendant, Beck.

It is ORDERED that American's, Hayes', Marion's, and Beck's Motions to Dismiss (Doc. 161, 179, 165) be GRANTED with respect to the antitrust claim and DENIED with respect to the breach of contract and tortious interference with business and contractual relations claims.

It is further ORDERED that Marion's Motion to Dismiss (Doc. 179) on the issues of capacity and legal existence be converted into a Motion for Summary Judgment. Marion shall file summary judgment material no later than 15 days after the filing of this Order. Counter plaintiffs shall file a response no later than 10 days after Marion's summary judgment brief. Marion may file a reply no later than 10 days after the response. The Court declines to rule on Marion's sufficiency of service claim until after a determination is made on Marion's capacity and existence as a legal entity.

It is further ORDERED that Beck's Motion to Dismiss (Doc. 165) on the issues of capacity and legal existence be converted into a Motion for Summary Judgment. Beck shall file summary judgment material no later than 25 days after the filing of this Order. Counter plaintiffs shall file a response no later than 10 days after Beck's summary judgment brief. Beck may file a reply no later than 10 days after the response.

SO ORDERED this 31st day of August 2005.

s/ Wesley E. Brown

Wesley E. Brown, U.S. Senior District Judge